IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-01822-LTB-BNB

TAF, L.L.C.,

       Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY,

       Defendant.

_____

ORDER
_____

       This matter is before me on a Motion for Summary Judgment [**Doc #90**] filed by Plaintiff, TAF, L.L.C. In addition, Defendant, Hartford Fire Insurance Co., has filed the following cross motions: Motion for Summary Judgment as to Plaintiff's Breach of Contract Claim [**Doc # 96**]; Motion for Summary Judgment as to Plaintiff's Claims Alleging Negligence and Negligent Misrepresentation [**Doc # 94**]; and Motion for Clarification or, In the Alternative, Motion to Dismiss Plaintiff's Claims for Bad Faith and Exemplary Damages [**Doc # 98**]. After consideration of the parties' briefs and related attachments, as well as oral argument presented during a hearing on February 26, 2008, I deny TAF's motion seeking summary judgment and I grant Hartford's motions for summary judgment. I also grant Hartford's motion to clarify and, as a result, I order that TAF's complaint shall be dismissed and judgment shall enter in favor of Hartford.

## I. FACTS

The facts in this case are undisputed. TAF acquired a Standard Flood Insurance Policy (the "SFIP"), issued by Hartford pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001, *et seq.* (the "NFIA"), for its commercial building located in Colorado Springs. In August of 2005, TAF sustained flood damage and, as such, made a claim on the SFIP for $59,619.43. Hartford ultimately paid a portion of the claim, in the amount of $19,765.66, but denied the remainder on the ground that the lower floor of TAF's building is a basement and, as such, is subject to the basement limitation contained in the SFIP.

TAF then brought this lawsuit against Hartford, the producer of flood insurance services on behalf of Hartford, and the insurance adjustment company that represented Hartford related to the SFIP. I subsequently dismissed the claims asserted against the representative on the basis that the NFIA preempted that claim. [**Doc #52**] In addition, the parties stipulated to the dismissal of the insurance adjustment company in May 2007. [**Doc #70**] On Hartford's motion to dismiss for failure to state a claim, I further ruled that TAF's equitable estoppel claim against Hartford was dismissed on preemption grounds. [**Doc #69**] As a result, TAF's remaining claims against Hartford are for bad faith breach of contract, negligence, and negligent misrepresentation.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the

2

burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry Co., supra,* 971 F.2d at 494.

## III. TAF's MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, TAF seeks judgment on two questions: first, is the definition of "basement" in the SFIP clear and unambiguous and, second, if so, does the lower floor of TAF's building constitute a basement pursuant to that definition.

In order to ensure consistent application, federal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program, and standard insurance law principles apply. *Nelson v. Becton*, 732 F.Supp.996, 999 (D. Minn. 1990), *aff'd*, 929 F.2d 1287 (8th Cir.1991). As a result, if the policy language is clear and unambiguous, its natural meaning controls. *Sodowski v. Nat'l Flood Ins. Program of Fed. Emergency Management Agency*, 834 F.2d 653, 656 (7th Cir. 1987)(*quoting Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d 1011, 1013 (5th Cir.1984)). The terms of the SFIP are strictly construed and enforced because such claims directly affect the United States Treasury. *Formal v. FEMA*, 138 F.3d 543, 545 (5th Cir.1998)(citations omitted). However, if the language is susceptible to two constructions, the one more favorable to the insured will be adopted because insurance contracts are written by the insurer and offered to the insured in a fixed form. *Nelson v. Becton*, *supra*, 732 F.Supp. at 999 (*citing Aschenbrenner v. United States Fidelity & Guar. Co.,* 292 U.S. 80, 84-85, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)).

Article II(A)(5) of the SFIP defines a basement as:

Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

Both parties maintain that the SFIP's definition of a basement in this case is clear and unambiguous. They rely upon three cases which have reviewed the issue and have concluded as

such. In *Nelson v. Becton, supra*, 732 F.Supp. at 998, the district court reviewed an SFIP which provided that a "basement" was "the lowest level or story which has its floor subgrade (below ground level) on all sides." The court ruled that the SFIP "unambiguously excludes from coverage certain losses to a homes lowest level when its floor is subgrade on all sides." *Id.* at 999. The court further determined that the plaintiffs' lower floors in that case were not true "walkouts" – defined as when the home's lowest level may be below grade on as many as three sides but on at least one side an exit is at ground level – because "their homes can only be exited by stepping up to reach ground level," and thus were basements as defined by the SFIP. *Id.* (rejecting the plaintiffs' contention that "since their homes' lower levels exited with only one or a few upward steps to their backyards" the basement exclusion did not apply).

The Eighth Circuit affirmed in *Nelson v. Becton*, *supra*, 929 F.2d at 1289, and held that because it was necessary to go up at least one step at the rear exit, the floors of the lower levels of the appellants' homes were subgrade on all sides. The court noted that "[t]he extent to which they were subgrade, whether 6, 8, or 40 inches, is immaterial under the policy" and, because the grade at the rear of the houses "was below the ground level at the point of exit," the floor level was subgrade and the SFIP definition of basement applied. *Id.*

In *Unger v. Liberty Mut. Ins. Co.*, 849 F.Supp. 839, 846 (E.D.N.Y. 1994), the court reviewed the "reverse factual situation" presented in *Nelson v. Becton, supra,* in that the lower level of the plaintiff's home in that case "was above the level of the ground near that entrance." Specifically, the plaintiff's driveway "gradually slopes down from the street to a garage and a door to the lower level of his home . . . and that the lower door leading to the lower level is above ground level." *Id.* at 841. Although it was undisputed that the sloping driveway was excavated

5

during construction "thereby altering the natural grade" and that "the bottom of the lower level doorway is approximately two feet lower than the sidewalk, roadway, and surrounding property," the *Unger* court determined that "it is obvious from *Becton* that the 'ground level' referred to in the policy definition, is intended to be that area close and adjacent to the lower level door and not the area of the sidewalk and street, a substantial distance away from the lower level." *Id.* at 846. As a result, court found that because the lower level of the plaintiff's residence was not subgrade or below ground level on all four sides, in that a person must step up from the ground "immediately adjacent to" the lower level door, it was not a "basement" within the purview of the SFIP. *Id.*

Finally, in *Linder & Associates, Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3rd Cir. 1999), the Third Circuit reviewed the same SFIP definition of "basement." The lower level at issue in that case was the "alley side of a building which included two garage doors used by trucks to pick up and deliver furniture" for a retail business. *Id.* at 549. The "lower level floor is approximately four inches below the threshold of the garage doors, and concrete ramps have been installed to facilitate entering and leaving . . .". *Id.* Additionally, "the alley also was a few inches down from the threshold [but] crushed limestone gravel was dumped into the alley on four different occasions, raising the surface level height of the alley to the same height as the threshold." *Id.* The plaintiff argued that the term "ground level" "should be defined as the natural grade existing at the time the building was built, and not as the surface level of the built-up alley." *Id.* at 550. The court rejected the plaintiff's argument, and held instead that at the time of the flood:

6

> the alley was even with the threshold, which is approximately four inches above the lower level floor. To enter the lower level from the alley, it was thus necessary to step down onto the lower level floor. The lower level floor at the rear side of the building, therefore, is below ground level and, hence, is a "basement" as that term is defined in the SFIP.

*Id.*

In this case, the pictures of the building supplied by both parties show that the two story building owned by TAF sits on a slope. At the east side of the building, the upper floor sits at natural grade level. The property then slopes to the opposite or the west side of the building, where the back is excavated and then is accessed via two stairways of eight steps each. The entrance to the lower level is on the north side of the building, which is accessed by one of the stairways on the east side via an excavated walkway. At the base of the stairway, there is a landing that requires some steps to cross before reaching the doorway to the lower level. At the exit of the lower level, the floor inside is substantially even to the ground outside. Hence, in order to exit the lower floor, a person would walk out the door onto the landing, then traverse eight to ten steps across an excavated landing, and then walk up the eight-step stairway to access the natural grade or street level.

As a result, the factual circumstances presented here are not the equivalent to those addressed in the case law relied upon by both parties. Although the level of the ground at the exit of the lower floor of TAF's building is substantially equal or level, it is clear that the area directly outside of the exit was significantly excavated in order to create the level exit. Like the facts presented in *Nelson v. Beacon, supra*, a party exiting the lower level of TAF's building must step up – in this case a party must walk eight to ten feet and then climb up eight steps – in order to

leave the building. *See Nelson v. Beacon, supra*, 929 F.2d at 1289 (the extent to which the floor is subgrade, "whether 6, 8, or 40 inches, is immaterial under the policy").

Likewise, the facts here are distinguishable from those in *Unger v. Liberty Mut. Ins., supra*, where the court found that the lower floor was not a basement under the SFIP. Although the ground in that case was excavated down by approximately two feet from "a substantial distance away" from lower level exit – thereby altering the natural grade – "a person must step up one step from the ground immediately adjacent to the door" in order to enter the building. *Id.* at 842. Here, the entrance to the lower level of TAF's building is not accessible unless a person proceeds down eight steps into an excavated concrete way that is a very short distance from the door. And, more importantly, there is no step up into the lower level as in *Unger v. Liberty Mut. Ins., supra*.

Therefore, under the indisputable factual circumstances in this case, I conclude that the SFIP definition of "basement"– that the floor be below ground level (subgrade) on all sides – applies to the lower level of TAF's building. TAF puts too much reliance on the "immediately adjacent to" language in *Unger v. Liberty Mut. Ins., supra*, and its interpretation to the contrary invites absurd results. Although at the exit of the lower level the landing is substantially level to the door, it is below ground level (subgrade) and it is clearly necessary to almost immediately go up several steps at the rear exit in order to leave the building. As such, the floor of the lower level of TAF's building is subgrade under *Nelson v. Beacon, supra,* and the definition of "basement" in the SFIP applies.

## III. HARTFORD'S MOTION FOR SUMMARY JUDGMENT AS TO BREACH OF CONTRACT CLAIM

In this motion, Hartford seeks summary judgment in its favor on TAF's breach of contract claim. It asserts that because there are no issues of material fact or law in this case, and that the bottom floor of TAF's building is clearly a "basement" under the SFIP, summary judgment should be entered in Hartford's favor. Because I have ruled that TAF's lower level is a basement as defined by the clear and unambiguous definition of "basement" in the SFIP, I grant Hartford's motion for summary judgment on TAF's breach of contract claim.

## IV. HARTFORD'S MOTION FOR CLARIFICATION OR TO DISMISS CLAIMS FOR BAD FAITH BREACH/EXEMPLARY DAMAGES

In this motion, Hartford seeks a ruling clarifying that TAF's claim for bad faith breach, and related claim for exemplary damages, is no longer viable in light of my prior ruling that TAF's state law tort claims arising out of claims handling are preempted under the NFIA.

I have previously ruled that 42 U.S.C. § 4072 provides exclusive subject matter jurisdiction and the sole remedy for a claimant dissatisfied with the amount of their claim allowance under an SFIP. Specifically, the statute provides that such claimants may assert a claim for breach of contract against the Director of FEMA or, as in this case, his fiscal agent. *See also* 44 C.F.R. Pt. 61, App. A(2), Art. IX (providing that "all disputes arising from the handling of any claim under [an SFIP] are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law").

I have also previously ruled that TAF's state law tort claims are based, at least in part, on the allegation that the building's lower floor constitutes a basement and, as a result, Hartford "wrongfully characterized some portion of the damaged premises as a basement" or "wrongfully procured a policy with a basement limitation." To the extent that such claims arise out of the procurement of the policy – as opposed to the handling of the claim – I concluded that TAF's state law tort claims were not preempted. Hartford now asserts that TAF's tort claim for bad faith breach is necessarily based on the handling of the claim – rather than the procurement of the policy – and to the extent that it was not clearly or explicitly dismissed in my previous rulings, it should have been. I agree.

Colorado law provides that an insurer owes the insured a non-delagable duty of good faith and fair dealing, the breach of which gives rise to a separate cause of action in tort. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003); *see also* Colo. Rev. Stat. § 10-3-1113(1). Colorado Revised Statue Section 10-3-1113(3) provides that "[u]nder a policy of first-party insurance, the determination of whether the insurer's delay or denial was reasonable shall be based on whether the insurer knew that its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable."

Therefore, for an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer, the insured must establish that when denying or delaying a claim, the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness. *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997); *see also Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1261 (Colo. 1985); *Burgess v. Mid-Century Ins. Co.*,

841 P.2d 325, 328 (Colo. App. 1992)(bad faith conduct occurs when an insurer intentionally denies a claim without a reasonable basis). Whether an insurer has in bad faith breached its duties to an insured is a question of reasonableness; in other words, "would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Id.* (*quoting Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo.1984)).

As a result, a claim for bad faith breach under Colorado law requires a determination of the reasonableness of an insurance companies denial or delay in paying a claim. As such, it necessarily goes to the handling of a claim. Therefore, I conclude that TAF's bad faith breach claim is a state law tort claim based on the handling of the claim, rather than the procurement of the SFIP. As such, it is preempted by the NFIA. *See* 42 U.S.C. § 4072; 44 C.F.R. Pt. 51, AppA(2), Art. IX; *Wright v. Allstate Insurance Co.,* 415 F.3d 384 (5th Cir.2005)(ruling that state law causes of action are preempted, and Federal common law does not provide any additional remedy for negligence in the handling of a flood insurance claim).

## V. HARTFORD'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS ALLEGING NEGLIGENCE & NEGLIGENT MISREPRESENTATION

Finally, Hartford seeks summary judgment on TAF's claims alleging negligence and negligent misrepresentation on the basis that there are no disputed issues of material fact and TAF has failed to state claim upon which relief may be granted. TAF's claims based in negligence – which at the hearing were said by TAF to be in the alternative – are at issue if I find, as I have, that the lower floor of TAF's building is, in fact, a basement under the SFIP definition. As noted

11

*supra*, I have previously limited these state law tort claims to allegations of negligence in the Hartford's procurement of the SFIP – as opposed to the handling of the claim.

**Negligence Claim:**

TAF's alternative claim for relief against Hartford based in negligence is that Hartford was negligent when it described the building as having "no basement" in its policy declarations. The undisputed evidence is that in TAF's application of insurance it represented to Hartford that the building at issue consisted of two floors, "Built on Slab at Ground Level." The application was signed by TAF's agent. The resulting policy declarations page issued by Hartford described the insured property, *consistent with TAF's application*, as "nonresidential, two floors, no basement." It referenced the SFIP, which together with the declarations page constituted TAF's policy. The SFIP, in turn, defines the "declarations page" as, "[a] computer generated summary of information you provided in the application for insurance." Article II (10); *see also* 44 C.F.R. Pt. 61, App. A(2), Art. II(B)(10).

In support of its request for summary judgment, Hartford first maintains that its actions in issuing a declaration page in conformance with the information provided in TAF's application cannot be deemed an act of procurement. Furthermore, Hartford asserts that TAF has alleged no facts to show that the action of issuing a declaration page in this case, even if such act constitutes procurement, amounted to negligence. In response, TAF asserts that the application only describes the building as "built on slab at ground level," which Hartford then assessed as "no basement." TAF argues that it was Hartford who made the "no basement" determination, not TAF or its agent. TAF contends that it was negligent for Hartford to state there was no

basement to the building, "especially without further investigation, inspection, research or request for additional information." TAF asserts that Hartford had received photographs of the building – as part of a previously submitted a claim for flood damage – which gave Hartford actual notice of the construction of the building. Furthermore, TAF notes that a prior flood claim was paid by Hartford without application of a basement limitation.

I agree with Hartford, however, that such "facts" do not suggest that the indication of "no basement" on the declaration page was not an accurate summary of the information provided by TAF in its application. TAF has cited no authority for the claim that Hartford has a duty to investigate the accuracy or applicability of the information contained in the application. In fact, the SFIP clearly asserts that the insurance carrier will pay a claim for flood loss if the insured has "furnished accurate information and statements." As a result, TAF has failed to provide any law or facts in support of a duty owed by Hartford to TAF related to the "procurement" of the policy via the issuance of the declarations page. *See generally Kaercher v. Sater,* 155 P.3d 437, 441 (Colo. App. 2006)("Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insured, but, absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy").

Moreover, I agree with Hartford that if it had issued a declarations page indicating that the property did have a basement, it would have resulted in a basement limitation being applied to TAF's flood loss. Thus even assuming, *arguendo*, that Hartford acted negligently, such act caused no actual damages. *See Garcia v. Omaha Property & Cas. Ins. Co.*, 933 F.Supp. 1064, 1070 (S.D. Fla.1995)(ruling that because the plaintiff could not have obtained additional flood

13

coverage for its lower level, regardless of the agent's conduct, the claims against the insurer "fail due to the absence of causation").

**Negligent Misrepresentation:**

In its negligent misrepresentation claim, TAF alleges that because the description of its building on the declarations page of the SFIP indicated that it had "no basement," TAF accepted the SFIP without any reason to believe that a basement limitation would be applied. TAF alleges that it relied upon the "no basement" designation in the declarations page and, as such, did not seek additional insurance. Accordingly, TAF argues that it has provided facts in support of its claim for negligent representation in the procurement of the SFIP.

However, TAF has not referred me to any evidence indicating that Hartford's agent or representative provided false information to TAF as to coverage provided by the SFIP – related to TAF's first level or otherwise – during the procurement of the policy. There is no evidence to support a claim that Hartford provided TAF false information related to the procurement of the SFIP. The "false information" relied upon by TAF is the indication on the declarations page that the building has no basement which, as discussed *supra*, was entirely consistent with the information provided by TAF on its application for the SFIP. *See generally Mehaffy, Rider, Windholz & Wilson v. Central Bank, N.A.*, 892 P.2d 230, 236 (Colo.1995) ("[t]o establish a claim for negligent misrepresentation, it must be shown that the defendant supplied false information to others in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied"). As such, TAF has failed

to assert any evidence or present a material issue of fact to support its tort claim for negligent representation by Hartford in this case related to the procurement of the SFIP.

ACCORDINGLY, I ORDER as follows:

    1) Plaintiff TAF's Motion for Summary Judgment [**Doc #90**] is DENIED;

    2) Defendant Hartford's Motion for Summary Judgment as to Plaintiff's Breach of Contract Claim [**Doc # 96**] is GRANTED;

    3) Defendant Hartford's Motion for Clarification or, In the Alternative, Motion to Dismiss Plaintiff's Claims for Bad Faith and Exemplary Damages [**Doc # 98**] is GRANTED;

    4) Defendant Hartford's Motion for Summary Judgment as to Plaintiff's Claims Alleging Negligence and Negligent Misrepresentation [**Doc # 94**] is GRANTED;

    5) Plaintiff TAF's Complaint is DISMISSED WITH PREJUDICE and the Clerk of the Court shall ENTER JUDGMENT in favor of Defendant Hartford; and

    6) Defendant Hartford is awarded its costs.

Dated: February __28__, 2008, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE